IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:07CR199-1 |
| Plaintiff, | ) ) ) | **SENTENCING MEMORANDUM** |
| v. | ) ) | |
| HAROLD STULTS, | ) ) | |
| Defendant. | ) | |

## ARGUMENT

**I.   Gall and Kimbrough Warrant A Sentence That Does Not Adhere to the Child Pornography Guidelines As The Guidelines Are Not Empirically-Grounded and Do Not Achieve the Objectives of § 3553(a).**

The United States Supreme Court has made it clear that the Sentencing Guidelines are not mandatory. United States v. Booker, 125 S. Ct. 738 (2005). The Guidelines are now merely "one factor among several courts must consider in determining an appropriate sentence." Kimbrough v. United States, 128 S. Ct. 558, 564 (2007); see also Gall v. United States, 128 S. Ct. 586, 602 (2007) (same). The Supreme Court in Gall particularly criticized the guidelines in tending to create "unwarranted similarities" among different offenders. Gall, 128 S.Ct. at 597. Rather, the proper approach is to make an "individualized assessment" on the facts of each case. Gall, 128 S. Ct. at 600.

The applicable sentencing statute, 18 U.S.C. 3553(a), altered by the Supreme Court's decision in Booker, has an overriding provision that instructs district courts to impose sentences that are "'sufficient, but not greater than necessary,' to achieve the goals of sentencing." Kimbrough, 128 S. Ct. at 570. Courts cannot automatically presume that a Guideline sentence is reasonable in any particular case. Gall, 128 S. Ct. at 596-597; see also Rita v. United States, 127 S. Ct. 2456, 2465 (2007) (same). Courts should give both

parties an opportunity to propose a certain sentence and should then consider all § 3553(a) factors to determine an appropriate sentence. Id. In making this determination, a judge must consider the purposes and factors of § 3553(a) and arguments that a sentence based entirely on the Guidelines is inappropriate based on general policy grounds, case-specific grounds (including guideline-sanctioned departures) or "regardless." Rita, 127 S. Ct. at 2463, 2467-68.

The facts of Kimbrough showed the guideline itself reflected unsound judgment in that it failed properly to reflect § 3553(a) considerations. 128 S. Ct. at 575. In Kimbrough, the Supreme Court upheld a below-guideline sentence in an crack trafficking case because the crack guidelines were not based on past practice and reflected unsound judgment in light of the purposes of sentencing and the need to avoid unwarranted disparities. The Court said that the Commission had used an "empirical approach based on data about past practices, including 10,000 presentence investigation reports," but it "did not use this empirical approach in developing the Guidelines sentences for drug-trafficking offenses." Id. at 567. When a guideline is not the product of "empirical data and national experience," it is not an abuse of discretion to conclude that it "yields a sentence 'greater than necessary' to achieve §3553(a)'s purposes." Id. at 575.

In a recent decision, this Court recognized such problems associated with the guidelines for child pornography offenses. In United States v. Baird, the Court noted the child pornography guidelines were not created using an empirical approach, but rather using "statutory directives," and as such, should be given less weight than "empirically-grounded" guidelines. Slip op., 2008 WL 151258 *7 (D. Neb. Jan. 11, 2008). Courts can impose a sentence that is different from that proposed by the child pornography sentencing guidelines

solely because these guidelines are not based on empirical data, experience or independent expertise, thus failing to fulfill the goals of § 3553(a). Id.

### II. Base Offense Level of 18 in Child Pornography Guidelines is Inappropriate in Light of Unempirical Legislative History

On November 29, 1990, Congress first criminalized the possession of child pornography. See Pub. L. 101-647, Title III, § 323(a), (b), Nov. 29, 1990, 104 Stat. 4818, 4819.  At this time, the offense only carried a base offense level of 10, which has nearly doubled since then to the current level of 18. See 56 FR 1846-01, 1991 WL 310646 (F.R.). The offense level took its first dramatic change in July 1991 when Senator Jess Helms of North Carolina, in response to letters from religious organizations, not studies from any credited source, introduced Amendment 780 that would alter § 2G2.2, the section governing child pornography sentencing. See 137 Cong. Rec. S10322-04.  No other senators were even present when Amendment 780 was introduced, as they were all in committee meetings at the time. See Treasury, Postal Service, Executive office of the President, and Independent Agencies Appropriations, Fiscal Year 1992, 137 Cong. Rec. S10356-01, S10363.  Amendment 780 was ultimately approved but after it was inserted with several other bills, a further indication of the lack of proper introduction and debate the amendment underwent.

The Sentencing Commission strongly opposed Amendment 780 because it represented a change that would undo the Commission's "carefully structured efforts to treat similar conduct similarly and to provide proportionality among different grades of seriousness" of child pornography offenders. See 137 Cong Rec. H6736-02.  The Commission also argued the legislation would force the Commission to rewrite the

3

guidelines for child pornography offenses "in a manner that [would] reintroduce sentencing disparity among similar defendants and render the guidelines susceptible to plea bargaining manipulation." Id. Despite these objections, Amendment 780 became Section 632 of Public Law 102-141 in 1991, and the Commission was forced to drastically alter the guidelines. See Amendment 372, U.S.S.G. App. C. Due to these changes, the base offense level for mere possession of child pornography jumped to 13. Amendment 780 ultimately represented a rejection of the studied approach the Commission had to child pornography sentencing and showed that major alterations to the child pornography guidelines would instead come from Congress and its general moral sense that sentences for such offenders should always be made stricter.

The offense level in U.S.S.G. 2G2.2 was increased to its current level of 18 in November 2004 after the Commission made a politically-expedient attempt to reconcile the provisions of the Protect Act. See Amendment 664, U.S.S.G. App. C. The Protect Act itself was an unempirical reconciliation of various bills that was initiated by two attorneys from the Department of Justice, not by any study or debate produced by Congress or the Commission. See Skye Phillips, Protect Downward Departures: Congress and the Executive's Intrusion Into Judicial Independence, 12 J.L. & Pol'y 947, 976-984 (2004) at 983 n. 185, 986. The Protect Act added arbitrary enhancements to § 2G2.2 and raised the mandatory minimum sentencing level for simple possession of child pornography. See supra at 9. Despite objections from various sources including the Chairman of the House Committee on the Judiciary, the American Bar Association and the Commission itself, which was not even given notice of or consulted with concerning these changes to the guidelines, the Protect Act became law on April 30, 2003. Phillips, at 990-992, 991 n. 219. According

to one commentator of the Protect Act and the changes it made to the child pornography guidelines, Congress essentially drafted its own sentencing guideline text and "completely ignored the expert role the Sentencing Commission was designed to play" by failing to give notice to or requesting study from the Commission before making such changes. Steven L. Chanenson, Hoist With Their Own Petard?, 17 Fed. Sent'g Rep. 20, 23 & nn. 54-57 (2004); see also United States v. Detwiler, 338 F. Supp. 2d 1166, 1171 (D. Or. 2004). In the end, the Commission made the decision to increase the base offense level to 18 for mere possession of child pornography solely to ensure that the guidelines range matched or exceeded the new mandatory minimum sentencing level that was increased by Congress's Protect Act, rather than to appropriately serve any statutory purpose of sentencing.

Ultimately the changes that have increased the base offense level for possession of child pornography from 10 to 18 have been based on Congressional morality sweeps rather than empirical data. Not only is this base offense level of 18 an arbitrary figure not grounded in reasoned study on child pornography offenders, but it is also an unnecessary and unfair approach the Guidelines have perpetuated in such cases which should no longer be set as the mandatory standard for all child pornography offenders. As Stults' proposed base offense level under the Presentence Investigation Report is based entirely on the Guidelines' arbitrary approach, this offense level is inappropriate and should not be adopted as part of Stults' sentence.

**III.   Enhancements Attributed to Stults Are Unwarranted As Arbitrary Increases Not Properly Based On Empirical Data**

    **A.   Two-Level Enhancement For Use of Computer Under § 2G2.2(b)(6)**

Through Amendment 537 that went into effect in November 1996, an enhancement was added to § 2G2.2 that called for a two-level increase of a child pornography offender's offense level when a computer was used as a part of the offense. See Amendment 537, U.S.S.G. App. C. Two of the purposes Congress set forth for creating this enhancement were to fight widespread dissemination of computer trafficking of child pornography and to combat the difficulty of law enforcement in discovering instances of child pornography. See Report to Congress, Sex Offenses Against Children, 1996; http://www.ussc.gov/r_congress/SCAC.htm, discussing the legislative history fo the Sex Crimes Against Children Prevention Act of 1995 found at H.R. Rep. No. 90, 104th Congr., 1st Sess. 3-4 (1995) as reprinted in 1996 U.S.C.C.A.N. 759. The United States Supreme Court decision in Gall makes it clear that the Guidelines create "unwarranted similarities" and that an "individualized assessment" should be made on the facts of a particular case. Gall, 128 S.Ct. at 597, 600. However, this enhancement applies to all offenders who use a computer as part of the offense whether the offender created a website disseminating child pornography or to download one image of child pornography.

The Commission objected to this enhancement, raising language similar to Gall, in saying that it was too broad and failed to take into account how a computer was being used in a particular offense and to distinguish between certain child pornography offenders. See Report to Congress, Sex Offenses Against Children, 1996, pages 28-29; http://www.ussc.gov/r_congress/SCAC.htm. The Commission noted that a person's offense is far more serious when a computer is used to initiate a website that creates child pornography than in situations where child pornography is merely downloaded on a

6

computer. Id. However, under the Guidelines ultimately enacted, a person who starts a child pornography website, creates the material going onto the website and disseminates the material to millions of viewers receives this same two-level computer enhancement as does someone who merely downloads one image off such a website. This creates the very kind of "unwarranted disparity" in sentencing that the Commission was charged with eliminating.

Today, as file sharing over the Internet is prevalent and common, nearly all child pornography offenders use a computer and receive this enhancement. Even as early as 1996, 97 percent of the 1,012 child pornography defendants used a computer and received this enhancement, yet only a small minority of those defendants were involved in creating websites to widely disseminate the material. *See*, Bureau of Justice Statistics Bulletin: "Federal Prosecution of Child Sex Exploitation Offenses, 2006," at page 6, available at http://www.ojp.usdoj.gov/bjs/pub/pdf/fpcseo06.pdf. It is also important to note that computer technology and usage now dramatically helps the investigation of child pornography offenses rather than inhibiting law enforcement as Congress originally believed.

The Presentence Investigation Report indicates Stults should receive the enhancement, like most other child pornography offenders, because he had downloaded child pornography images and videos onto his computer. Stults, however, had not created a website disseminating such material nor was he creating such material to be placed onto a website. Stults is not even accused of sharing his computer files with others. Thus, Stults is not the type of offender Congress intended to reach through this computer-oriented enhancement under § 2G2.2(b)(6). Ultimately, the purposes behind the computer usage

enhancement are no longer relevant.  This two-level enhancement is unwarranted and should not be applied to Stults's sentences.

### B.     Enhancement for Number of Images Under § 2G2.2(b)(7)

Like the base offense level discussed above, the enhancement for having a certain number of child pornographic images was a part of drastic changes to § 2G2.2 that were initiated, not by a study done by the Commission or under Congressional directive, but when two attorneys from the Department of Justice encouraged Congressman Tom Feeney to insert these changes into the Protect Act without giving notice to the Commission.  *See* Skye Phillips, *Protect Downward Departures: Congress and the Executive's Intrusion into Judicial Independence*, 12 J.L. & Pol'y, 947, 976-984 (2004) (hereinafter Phillips). Debate on these changes to the child pornography Guidelines was given less than a half an hour and, despite objections by the Commission, the Protect Act became law with these added alterations in April 2003. Phillips, at 983, 990-992, 991 n. 219. Senator Patrick Leahy even blatantly criticized the proposed changes, saying the alterations would "undermine the federal sentencing system and prevent judges from imposing just and responsible sentences." Phillips, 990-992, 991 n. 215; see also 149 Cong. Rec. S5137-01, 5145 (daily ed. Apr. 10, 2003) (statement by Sen. Leahy).  Despite such objections, by a direct amendment to §2G2.2, as much as a five-level enhancement was added to guidelines depending on the number of images possessed by a child pornography offender.  No research, study, experience or rationale was provided for creating such a sentencing enhancement.

In the PSR Stults receives a five-level enhancement as he was found to be in possession of 60 videos and 25 child pornography images. This results in a total image count credited to Stults of 4,525 solely because the 2004 Guidelines created an Application Note defining any video-clip as creating 75 images, not because of any analysis done on the particular length or nature of the videos Stults possessed. See U.S.S.G. § 2G2.2, App. Note 4(ii). However, because the general enhancement for number of images was not properly debated, was not introduced to Congress with any kind of empirical evidence testifying to its purpose and was not properly introduced to the Commission, this enhancement under §2G2.2(b)(7) does not fulfill the purposes of § 3553(a) and should, therefore, not be applied to Stults's sentence.

**C.     Enhancement for Receipt of a Thing of Value, § 2G2.2(b)(3)(B)**

Paragraph 23 of the PSR imposes a five level enhancement because of the probation officer's belief that "the offense involved distribution or the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain."  The stated justification for this enhancement is simply Stults' use of Limewire to acquire the child pornography images. The Addendum to the PSR cites United States v. Griffin, 482 F.3d 1008 (8th Cir. 2007) to support the enhancement.

The defendant in Griffin used a file sharing program called Kazaa.  Griffin admitted "he knew that by using Kazaa he would be able to download files from other Kazaa users and that other Kazaa users would be able to download files from him."  482 F.3d at 1010. Forensic evidence also established that Griffin had distributed images.  However, in Stults' case, there is no evidence that Stults knew his use of Limewire allowed others to receive

9

images from his computer, that he installed Limewire with the expectation he would thereby receive child pornography or that he, in fact, shared images. These distinctions render the five level enhancement of § 2G2.2(b)(3)(B) and Griffin inapplicable here.

## CONCLUSION

The Guidelines for child pornography offenses are ultimately without empirical study or data and are unwarranted in failing to fulfill the objectives of § 3553(a). An individualized review of the facts in Stults' case point to a lower sentence than the guidelines suggest. For these reasons, Stults should not be sentenced according to the Guidelines and the Presentence Investigation Report that adheres to such a sentence should not be followed.

HAROLD STULTS, Defendant,

By:   s/ David R. Stickman
**DAVID R. STICKMAN**
**Federal Public Defender**
222 South 15th Street, Suite 300N
Omaha, NE 68102
(402) 221-7896

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: Michael Norris, Assistant United States Attorney, Omaha, NE.

s/ David R. Stickman