IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:07CR199 |
| | ) | |
| v. | ) | |
| | ) | **SENTENCING MEMORANDUM** |
| HAROLD STULTS, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————— | ) | |

This matter is before the court for sentencing. This memorandum opinion supplements findings made on the record at sentencing hearings on July 24, 2008, and August 7, 2008.

### I. FACTS

On May 23, 2007, defendant Harold Stults was charged in a one-count Indictment with possession of child pornography, a violation of 18 U.S.C. § 2252(a)(4)(B). Filing No. 1, Indictment. Because he had previously been convicted of attempted sexual assault of a child, he was subject to sentencing under 18 U.S.C. § 2252(b)(2). Under 18 U.S.C. § 2252(b)(2), if a defendant has a prior conviction under the laws of any state relating to aggravated sexual abuse, sexual abuse or abusive sexual conduct involving a minor or ward, he is subject to imprisonment for not less than 10 years and not more than 20 years. 18 U.S.C. § 2252(b)(2).

Pursuant to a plea agreement, Stults entered a plea of guilty to the charge. Filing No. 50. In the plea agreement, the defendant retained the right to contest the ten-year mandatory minimum sentence by challenging his prior conviction. *Id.*, Plea Agreement at 1. He further reserved the right to challenge the United States Sentencing Guidelines

(hereafter, "the Guidelines") enhancements for use of a computer, use of a peer-to-peer network, possession of more than 600 images, and possession of images of torture and images of prepubescent minors.  The government agreed to forego pursuing charges for the unlawful receipt and distribution of child pornography under 18 U.S.C. § 2252A.[1]  *Id.* at 2.  The government also agreed to recommend a sentence at the low end of the Guidelines.  *Id.*  The court accepted Stults's plea of guilty but deferred acceptance of the plea agreement pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office") that calculated the defendant's Guidelines sentence.

The Probation Office based its outline of the offense conduct on the prosecutor's version of events and on law enforcement investigative reports.  Filing No. 63, PSR at 4.  As a result of an investigation involving a peer-to-peer file sharing program, a law enforcement agent downloaded several files from a computer with an Internet protocol ("IP") address assigned to Stults.  *Id.*  The files included images of child pornography.  *Id.* A search warrant was issued and agents of Immigration and Customs Enforcement ("ICE") seized three computer hard-drive towers, computer storage media and documents.  *Id.* Forensic analysis revealed 60 videos of child pornography and 25 images of child pornography.  *Id.*

The Probation Office determined that U.S.S.G. § 2G2.2 provided the base offense level for a violation of 18 U.S.C. § 2252(a)(4) and determined that Stults's base offense

---

[1]That statute makes it a crime to knowingly receive or distribute any child pornography that has been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer.  18 U.S.C. § 2252A(a)(2).  The statute provides a fifteen-year mandatory minimum sentence for a person previously convicted of a child sex abuse crime or a child pornography possession or distribution crime and a statutory maximum of 40 years.  18 U.S.C. § 2252A(b)(1).

level should be 18.  The Probation Office found the following adjustments were applicable: a two-level increase under U.S.S.G. § 2G2.2(b)(2) (for possession of material containing a prepubescent minor), a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) (for distribution for a thing of value but not for pecuniary gain), a four-level increase under U.S.S.G. § 2G2.2(b)(4) (for material that portrays sadistic or masochistic images or torture), a two-level increase under U.S.S.G. § 2G2.2(b)(6) (for use of a computer), and a five-level increase under U.S.S.G. § 2G2.2(b)(7) (for possession of more than 600 images). The application of these enhancements resulted in an adjusted offense level of 36.  The Probation Office then subtracted three levels for the defendant's acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total offense level of 33.  Stults was assessed seven criminal history points for prior convictions for attempted sexual assault, burglary, reckless driving, and harassment, resulting in a criminal history category of IV. At base offense level 33 and criminal history category IV, the Guideline imprisonment range is 188 to 235 months.

Stults objected to the government's notice of a prior conviction.  Filing No. 53.  He also objected to the assessment of a five-level enhancement for distribution in exchange for a thing of value in the PSR and to the assessment of a two-level enhancement for use of a computer.  Filing No. 55.  He contends the enhancements are not the result of empirical research or study and are not worthy of strict adherence.  *Id.* at 3.  Stults also moved for a departure, variance or deviation from the Guidelines.  Filing No. 57, Defendant's Brief.

At his sentencing hearing, Agent Brent Morral testified with respect to the investigation that led to the seizure of Stults's computer.  Filing No. 60, Witness List.  A DVD and list of shared files were admitted as exhibits.  Filing No. 59, Exhibit List.

## II.  LAW

The Sentencing Guidelines are no longer mandatory.  *United States v. Booker,* 543 U.S. 220, 260-61 (2005).  In *Booker,* the Supreme Court held that the mandatory Sentencing Guidelines system violated the Sixth Amendment.  *Booker,* 543 U.S. at 226-27.  In the *Booker* remedial opinion, the Supreme Court determined that the constitutional violation would be cured by modifying the federal sentencing statute to make the Guidelines effectively advisory.  *Id.* at 245.  Consequently, the range of choice in sentencing dictated by the facts of the case has been significantly broadened.  *Gall v. United States,* 552 U.S. —, —, 128 S. Ct. 586, 602 (finding a sentence outside the Guidelines to be reasonable); *Kimbrough v. United States,* 552 U.S. —, —, 128 S. Ct. 558, 570 (2007) (noting that courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines); *Rita v. United States,* 551 U.S. —, —, 127 S. Ct. 2456, 2465 (2007) (holding that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations"); *Cunningham v. California,* 549 U.S. 270, —, 127 S. Ct. 856, 867 (2007) (stating that judges are no longer tied to the sentencing range indicated in the Guidelines but are obliged to "take account of" that range along with the sentencing goals Congress enumerated in 18 U.S.C. § 3553(a) of the Sentencing Reform Act).  District courts must therefore "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'"  *Kimbrough*, 552 U.S. at —, 128 S.

4

Ct. at 570 (*quoting Booker,* 543 U.S. at 245-246); *Gall,* — U.S. at —, 128 S. Ct. at 596 (stating "[t]he Guidelines are not the only consideration, the district judge should consider all of the § 3553(a) factors").  These cases "mean that the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines."  *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 577 (Scalia, J., concurring).

The Sentencing Reform Act "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'"  *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570 (*quoting* 18 U.S.C. § 3553(a)). The statute further provides that "in determining the appropriate sentence, the court should consider a number of factors, including 'the nature and circumstances of the offense,' 'the history and characteristics of the defendant,' 'the sentencing range established' by the Guidelines, 'any pertinent policy statement' issued by the Sentencing Commission pursuant to its statutory authority, and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id. (quoting* 18 U.S.C. § 3553(a)).  A sentencing judge has greater familiarity with an individual case and individual defendant than the Commission or the appeals court and is "therefore 'in a superior position to find facts and judge their import under § 3353(a)' in each particular case."  *Id*., 552 U.S. at —, 128 S. Ct. at 574 (*quoting Gall,* 552 U.S. at —, 128 S. Ct. at 597).

5

Although the Guidelines remain "the starting point and the initial benchmark" in determining a sentence, the district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." *Gall,* 552 U.S. at —, 128 S. Ct. at 596-97.   "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party."   *Id.,* 552 U.S. at —, 128 S. Ct. at 596.   If the court decides that an outside-Guidelines sentence is warranted, the court must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.   *Id.*   The Supreme Court rejects, however, the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" and rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.* at 595.

Congress established the Sentencing Commission ("the Commission") "to formulate and constantly refine national sentencing standards," in fulfillment of its important institutional role.   *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 57; *Rita v. United States,* 551 U.S. at —, 127 S. Ct. at 2464.   When operating within that institutional role, the Sentencing Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting United States v. Pruitt,* 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)).   In formulating the Guidelines, the Commission developed and used data on past practices and recidivism.   *See* United

States Sentencing Commission, Fifteen Years of Guidelines Sentencing (Nov. 2004) ("Fifteen-Year Assessment") at 14; U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567.  *Gall,* 552 U.S. at —, 128 S. Ct. at 594 (noting that "even though the Guidelines are advisory rather than mandatory, they are . . . the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions").  Based on these sentencing statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range.  Fifteen- Year Assessment at 14.  Accordingly, in many cases the Guidelines represent a reasonable estimation of a fair sentencing range.  *See Kimbrough,* 128 S. Ct. at 574.

However, for policy reasons and because statutory mandatory minimum sentences dictated many terms of the Guidelines, the Commission departed from past practices in setting offense levels for such crimes as fraud, drug trafficking, and child abuse crimes and sexual offenses.  Fifteen-Year Assessment at 15, 72-73; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567.  Consequently, the Guideline ranges of imprisonment for those crimes are a less reliable appraisal of a fair sentence.  *See Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574-75.

When Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'"  *See, e.g., Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting*

*Rita*, 551 U.S. at —, 127 S. Ct. at 2465); *see also Gall,* 552 U.S. at —, 128 S. Ct. at 594 n.2 (noting that not all Guidelines are tied to empirical evidence).  In such cases, it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case."  *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 575.

The Guidelines for child exploitation offenses were not developed under the empirical approach, but were promulgated, for the most part, in response to statutory directives.  *See*, *e.g.,* U.S.S.G. App. C, Vol. I, Amends. 537 & 538 (Nov. 1, 1996); Vol. II, amend. 592 (Nov. 1, 2000), 615 (Nov. 1, 2001), 649 (April 30, 2003); Supp. Vol., amend. 651 (Oct. 27, 2003), 664 (Nov. 1, 2004); United States Sentencing Commission, Report to Congress: Sex Offenses Against Children, Findings and Recommendations Regarding Federal Penalties (June 1996) ("Sex Offenses Against Children Report").  The Commission itself acknowledges that "[t]he frequent mandatory minimum legislation and specific directives to the Commission to amend the Guidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress."  Fifteen-Year Assessment at 73; *see also* United States Sentencing Commission, Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System at 26 (Aug. 1991) (noting that "mandatory minimums are both structurally and functionally at odds with sentencing guidelines and the goals the guidelines seek to achieve").

The text and structure of the criminal statute under which the defendant was charged and convicted, 18 U.S.C. § 2252, prohibits four categories of conduct with respect

to child pornography:  (1) transporting or shipping child pornography in interstate or foreign commerce by any means, including by computer; (2) receiving or distributing child pornography that has been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer; (3) selling, or possessing with intent to sell, child pornography that has been mailed or shipped in interstate or foreign commerce by any means, including by computer; and (4) knowingly possessing child pornography that has moved in interstate or foreign commerce by any means, including by computer.  18 U.S.C. § 2252(a)(1)-(4).  The first three categories of conduct are punishable, for a first time offender, by a minimum sentence of five years and a maximum sentence of 20 years.  18 U.S.C. § 2252(b)(1).  The fourth category, simple possession, carries a maximum sentence of ten years for a first offender, with no mandatory minimum.  *Id.*  A defendant with a prior conviction for a sexual abuse crime involving a minor is subject to a mandatory minimum sentence of 15 years for receiving, transporting, distributing, selling or possessing with intent to sell child pornography and subject to a mandatory minimum sentence of ten years for possession of child pornography.  18 U.S.C. § 2252(b)(2).

At the inception of the Guidelines, simple possession of child pornography was not a crime and the relevant guideline provision, § 2G2.2, was limited to "transporting, receiving, or trafficking" offenses.  *See* U.S.S.G. § 2G2.2 (1987).  The crimes of possession and possession with intent to sell were added to the statute as part of the Crime Control Act of 1990.  *See* Pub. L. 101-647, § 323(b), 104 Stat. 4789, 4818-19 (1990); *United States v. Vig,* 167 F.3d 443, 449 (8th Cir. 1999) (noting the expansion of Congress's enforcement authority as a result of the criminalization of the mere possession

of child pornography).[2]  Correspondingly, Congress directed the Sentencing Commission to "amend existing Guidelines for sentences involving sexual crimes against children . . . so that more substantial penalties may be imposed if the Commission determines current penalties are inadequate."  Pub. L. 101-647, 1990 S. 3266, Title III, § 323(a),(b), 104 Stat. 4789, 4819 (Nov. 29, 1990).  In response, the Commission proposed the creation of a separate guideline provision, § 2G2.4, with a base offense level of 10, to cover possessing, receiving, or transporting child pornography.  *See* Notice of Proposed Amendments to the Sentencing Guidelines, 56 Fed. Reg. 1846-01, 1863, 1991 WL 310646 (proposed Jan. 17, 1991).  Under the Sentencing Commission's proposal, trafficking would continue to be covered in § 2G2.2, with a base offense level of 13.  *Id.* at 1863-64.

Later, over the objection of the Sentencing Commission, Congress, reacting to the erroneous perception that the Sentencing Commission had lessened penalties for child pornography crimes, again directed the Commission to alter the Guidelines.  *See* 137 Cong. Rec. H6736-02, H6737 (1991).  In doing so, Congress rejected the Sentencing

---

[2]Over the years, Congress has passed numerous laws of increasing severity that regulate child pornography and exploitation of children.  *See, e.g.,* the Protection of Children Against Sexual Exploitation Act of 1977, *codified as amended* at 18 U.S.C. §§ 2251-2253 (targeting the commercial production of visual or print depictions involving minors engaged in sexually explicit conduct); the Child Protection Act of 1984, *codified as amended* at 18 U.S.C. § 2253 (raising the age of a child for purposes of defining child pornography from sixteen to eighteen); the Child Protection and Obscenity Enforcement Act of 1988, *codified as amended* at 18 U.S.C. §§ 2251 & 2252(a) (criminalizing the use of computers to transport, distribute, or receive visual depictions involving minors and prohibiting the knowing interstate transportation and receipt of visual depictions of sexually explicit conduct involving a minor); the Sex Crimes Against Children Act of 1995, *codified as amended* at 18 U.S.C. §§ 2251 & 2252; the Child Pornography Prevention Act of 1996, *codified as amended* at 18 U.S.C. §§ 2251 (extending the prohibition against child pornography to sexually explicit images that appear to depict minors but were produced without using any real children), invalidated as unconstitutional in *Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002), & 2252A (punishing, among other activities, anyone who "knowingly possesses any . . . material that contains an image of child pornography that has been mailed . . . in interstate or foreign commerce by any means, including by computer"); the Protection of Children from Sexual Predators Act of 1998, *codified as amended* at 18 U.S.C. § 2426 (increasing punishment for persons who misrepresent themselves as minors or use computers or Internet access devices to locate and gain access to minors and for repeat offenders); the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), *codified as amended* at 18 U.S.C. § 2252B (making it a criminal offense to use "a misleading domain name on the Internet with the intent to deceive a person into viewing obscenity or material constituting obscenity").

Commission's advice and abandoned the studied empirical approach to child pornography sentencing.  *See id.* at H6738 (Correspondence to Congressman Edward R. Roybal from Sentencing Commission Chairman William Wilkins).   Congress explicitly directed the Sentencing Commission to increase the base offense level for simple possession from 10 to 13, to include "receiving" pornography in the Guidelines section that governed trafficking and transporting, to increase the base offense level for receiving, transporting, and trafficking from 13 to 15 and to add enhancements for the number of items possessed and for a pattern of activity involving the sexual abuse or exploitation of a minor.  *Id.* at H6741. In 1995, Congress again directed the Commission to increase penalties for child pornography and other sex crimes against children.  *See* U.S.S.G. App. C., Vol. I, Amends. 537 & 538 (November 1996) (implementing the Sex Crimes Against Children Prevention Act of 1995, Pub. L. No. 104-71, H.R. 1240, 104th Cong., 109 Stat. 774 (1995) (enacted)); 141 Cong. Rec. H4122-01, 1995 WL 143978 (1995).   It also directed the Sentencing Commission to prepare a report and analysis of sex offenses against children and child pornography for submission to Congress.  Sex Crimes Against Children Prevention Act of 1995*,* Pub. L. No. 104-71, H.R. 1240, 104th Cong., 109 Stat. 774, 775 (1995) (enacted). The Sentencing Commission carried out the directive by increasing the base offense levels for producing, trafficking, and possessing child pornography by two levels and adding a two-level enhancement for use of a computer.  *See* Notice of Submission to Congress of Amendments to the Sentencing Guidelines, 61 Fed. Reg. 20,306, 20,307-08, 1996 WL 223875 (F.R.) (May 6, 1996) (to be codified at U.S.S.G. §§ 2G2.1, 2G2.2, 2G2.4).   The Commission also added other amendments clarifying and broadening the definition of the "pattern of activity involving sexual abuse of a minor" enhancement to apply to conduct unrelated to the offense of conviction in order to "increase the sentences for the most

dangerous offenders." Sex Offenses Against Children Report at i; *see* U.S.S.G. App C, Vol. I, amend. 537.

In its report to Congress, noting that "[i]t appears that a significant portion of child pornography offenders have a criminal history that involves the sexual abuse and exploitation of children," the Sentencing Commission recommended that Congress increase statutory maximum sentences for production of child pornography and double the statutory maximum for offenders with prior convictions for sex abuse crimes. Sex Offenses Against Children Report at ii. The amendments and recommendations were intended to "ensure lengthy incarceration of repeat sex offenders who show the greatest risk of victimizing children." *Id.* at i. Noting that it was constrained by the 1991 Congressional directive that cases involving receipt of pornography should be sentenced under the trafficking guideline rather than the possession guideline, the Commission contemplated consolidating the trafficking/receipt and possession guidelines in a future amendment in order to reduce unwarranted disparity between convictions for receipt and those for possession.[3] *Id.* at 11, 41.

In compiling and analyzing its statistics, the Sentencing Commission noted that federal prosecutions for child sex offenses represented a small percentage of the total number of such cases nationwide, because the vast majority of sex offenses were prosecuted in state court. *Id*. at i. The Commission stated that "[p]enalties for sex offenses against children have been increased in recent years and are quite severe," but noted that

---

[3]The Commission contemplated that the consolidated guideline would have the higher base offense level of the pre-consolidation guideline, but a two-level downward adjustment would apply if the case involved the receipt or possession of fewer than 10 items with no intended distribution. Sex Offenses Against Children Report at 41.

amendment may "be appropriate to increase sentences for the most dangerous offenders." Sex Offenses Against Children Report, Executive Summary at 1.

Congress responded to the Commission's report with new legislation increasing penalties for child pornography, exploitation and abuse.  Protection of Children From Sexual Predators Act of 1998, Pub. L. No. 105-314, 1998 H.R. 3494, 105th Cong., 112 Stat. 2974 (1995) (enacted).  Congress directed the Commission to increase penalties and add enhancements and to clarify that distribution included distribution for nonpecuniary gain.  *Id.,* 112 Stat. at 2980-82.  The Sentencing Commission afforded expansive coverage to the meaning of distribution in U.S.S.G. § 2G2.2(b)(3)(A)-(F) and added several enhancements depending on the purpose and audience for the distribution.  U.S.S.G. App. C, Vol. II, amend. 592 (Nov. 1, 2000).

Congressional enactment of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (the "PROTECT Act") established a five-year mandatory minimum sentence for trafficking/receipt offenses and made several direct amendments to the Guidelines.[4]  *See* PROTECT Act, Pub. L. No. 108-21, 2003 S. 151, 108th Cong., 117 Stat. 650, 653 (2003) (enacted); U.S.S.G. App. C, Vol. II, amend. 649 (April 30, 2003).  Implementing directives of the Act, the Sentencing Commission collapsed the guideline dealing with possession (formerly U.S.S.G. § 2G2.4) into the guideline dealing with trafficking of pornography (U.S.S.G. § 2G2.2).  *See* U.S.S.G. App. C, Supp. Vol., amend. 664 (Nov. 1, 2004).  To conform to the new mandatory minimum sentences

---

[4]The PROTECT Act also increased the statutory maximum term of imprisonment t from 15 to 20 years for trafficking/receipt offenses under 18 U.S.C. §§ 2252(a)(1)-(3) and 18 U.S.C. § 2252A(a)(1),(2),(3), (4) and (6) and increased the statutory maximum for possession offenses under 18 U.S.C. § 2252(a)(4) and 18 U.S.C. § 2252A(a)(5) from five to ten years.  PROTECT Act, Pub. L. No. 108-21, 2003 S. 151, 108th Cong., 117 Stat. 650, 653 (2003) (enacted)

and increased statutory maxima, the Sentencing Commission also raised base offense levels for trafficking/receipt offenses from 18 to 22 and base offense levels for possession from 15 to 18. *Id.* The Commission also added several specific-offense-characteristic enhancements and significant enhancements for the number of images possessed, received or distributed. *See id.* The Commission noted that enhancements for use of a computer and number of images would be applicable in every case, thus ensuring that the Guideline sentences would approximate the statutory mandatory minimum sentences. *Id.*

The clear focus of this legislation and concomitant Guidelines revision is on the patent evils of child pornography and the new dimension that computer technology adds to those evils. *See* Child Pornography Prevention Act of 1996, Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 121, 1996 H.R. 3610, 104th Cong., 110 Stat. 3009, 3009-26 (1996); *see also* notes following 18 U.S.C.A. § 2251. In particular, amendments to the Guidelines reflect Congressional concerns that "pedophiles, including those who use the Internet, are using child pornographic and obscene material to desensitize children to sexual activity, to convince children that sexual activity involving children is normal, and to entice children to engage in sexual activity." U.S.S.G. App. C., Vol. 2, amend. 592 (Nov. 1, 2000). The primary victims of the crime of possession of pornography are the exploited children. *See United States v. Rugh,* 968 F.2d 750, 756 (8th Cir. 1992).

### III.   ANALYSIS

#### A.   Guideline Calculation

The court first calculates the defendant's sentence under the advisory Guidelines. The court adopts the findings in the PSR and overrules the defendant's objections. The

court finds that Stults's base offense level under the Guidelines is 18.  See U.S.S.G. § 2G2.2(a)(1).  The court further finds the following adjustments are applicable:  a two-level increase under U.S.S.G. § 2G2.2(b)(2) for possession of material containing a prepubescent minor, a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) for distribution for a thing of value but not for pecuniary gain, a four-level increase under U.S.S.G. § 2G2.2(b)(4) for material that portrays sadistic or masochistic images or torture, a two-level increase under U.S.S.G. § 2G2.2(b)(6) for use of a computer, and a five-level increase under U.S.S.G. § 2G2.2(b)(7) for possession of more than 600 images.  The application of these enhancements results in an adjusted offense level of 36.  The court finds an adjustment for acceptance of responsibility is warranted and the government has moved for a three-level adjustment.  The court thus finds the defendant's total offense level under the Guidelines is 33.  At criminal history category I, the defendant's advisory Guidelines term of imprisonment is 188 to 235 months.[5]

### B.    Section 3553 Factors

### 1.    Nature of the Offense

In considering the nature and circumstances of the offense, the court first finds possession of child pornography is a serious offense.  It is one of a class of crimes that involve commercial sex acts, sexual exploitation of minors, and obscenity covered by part G of the Guidelines.   Sexual exploitation offenses include the production of child pornography and the exploitation of children for the purposes of prostitution or pornography production, as well as trafficking in pornography.  Criminalizing the possession of child

---

[5]The court's determination of the Guideline sentence in a child pornography case does not generally include consideration of departure issues.  The court's authority to downwardly depart is controlled by the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (the "PROTECT Act").  18 U.S.C. § 3553(b)(2).  That Act amended 18 U.S.C. § 3553(b) to restrict the authority of the district courts to depart from the Guidelines in sexual offense and child pornography cases.  *Id.*

pornography is a necessary complement to laws banning distribution of such items, and is intended to destroy the market for exploitation of children.  Possession of pornography is the least serious of the crimes on the continuum of conduct–from possession to distribution to production to predatory abuse–that exploit children.  One who possesses child pornography is considerably less culpable than one who produces or distributes the exploitative materials and a possessor is a marginal player in the overall child exploitation scheme.  Notably, with respect to the circumstances of the crime, there is scant evidence that Stults intended to share the materials with others.  Although Stults was in fact sharing the materials through the peer-to-peer program (as evidenced by the fact that ICE agents obtained the materials), the only evidence from which the court could infer that he did so knowingly was his possession of several devices for storage of such materials which could indicate that he was sufficiently sophisticated to understand that his stored data could be shared in a peer-to-peer file sharing program.  Nevertheless, there is no direct evidence that Stults actually knew that others could retrieve the materials from his computer and no evidence that he ever sent any materials to others.  He did not set up a website or otherwise advertise, promote or widely disseminate the materials.  The court notes that, although an enhancement for distribution for a thing of value applies under the Guidelines, the evidence with respect to this issue is slim.

The court is troubled by the interplay between the child pornography statutes and the Guidelines in light of the government's agreement, in exchange for defendant's guilty plea, to forego the prosecution of Stults for receipt or distribution of child pornography that has been mailed, shipped, or transported in interstate commerce by any means, including a computer under 18 U.S.C. § 2252A.  Prosecution under that statute would have carried a fifteen-year, as opposed to ten-year, mandatory minimum.  Arguably, in foregoing the

option of charging possession as opposed to receipt or distribution of child pornography, the government has already afforded Stults the effective benefit of a shorter sentence. Yet, the government strenuously argued for application of the "distribution for a thing of value" enhancement, argued for an expansive definition of distribution to include peer-to-peer file-sharing, and urged the court to impose a Guidelines sentence which would have meant fifteen years.  Thus, the benefit that inured to Stults as a result of the concession the government made to induce his guilty plea is illusory at best.

In the context of child pornography via the Internet, it is generally necessary to receive pornography in order to possess it.  Similarly, under expansive definitions of distribution, any possessor of child pornography who obtains it via an Internet file-sharing program, knowingly or not, is a distributor.  The statutes criminalizing the possession of child pornography, as amended over time and as interpreted by the Sentencing Commission in formulating Guidelines, are clearly aimed at the widespread and profit-driven dissemination of child pornography that the Internet facilitates and fosters.  In the context of most child pornography possession prosecutions, without reference to rare, unusual, or far-fetched factual situations, there does not seem to be any distinction between receiving/distributing and possessing child pornography.  *Cf. United States v. Watzman,* 486 F.3d 1004, 1009 (7th Cir. 2007) (illustrating the unusual situation wherein a person who receives child pornography by accident—for example, if he sought adult pornography but was sent child pornography instead—is not guilty of knowingly receiving it, though he is guilty of possessing it if he retains it).  Because the facts of this case do not involve any such unusual situation, the court knows of no nonarbitrary rationale for the government's charging decision.  In the context of most  Internet child pornography crimes, there is no way to draw a principled distinction between receipt and distribution crimes and

possession crimes, and the exercise of the government's prosecutorial discretion harbors the potential for arbitrariness and abuse.

In any event, the government cannot be heard to "stand by" its agreement while simultaneously urging the court to negate the government's supposed charging beneficence by lengthening the defendant's sentence as the result of an enhancement that involves the same conduct that was contemplated in its foregone charging option. In many cases, the government can argue that it "could have" charged a different offense. Quite simply, it is the court, and not the prosecutor, who is obliged to consider the factors set out in 28 U.S.C. § 3553. Section 3553 does not instruct the court to consider prosecutorial charging decisions in its analysis.

### 2.       Defendant's History and Characteristics

The court has also considered the defendant's history and characteristics. The record shows that Stults is a forty-two-year-old man who was sexually abused as a child. He has a high school education and served honorably in the U.S. Army National Guard. He has maintained stable employment for most of his life. He was convicted of attempted sexual assault of a minor in 1993 and sentenced to six to twelve years in jail.[6] He received psychiatric counseling after that conviction. In 1997, he was convicted of burglary in an incident with sexual overtones and sentenced to six years in prison.

Importantly, although Stults has a conviction for prior attempted sexual abuse of a child, the government has not presented any evidence that Stults is, at present, a pedophile, sexual predator or child abuser. Stults's conviction for sexual assault on a child occurred fourteen years ago. Eleven years ago, he was convicted of burglary in an

---

[6]In Nebraska, under state sentencing guidelines, offenders typically serve half of the low end of a sentence.

incident with sexual overtones.  Since then, his only conduct involving child exploitation has been possession of child pornography in his home.  The court finds that a sentence that more than doubles his lengthiest previous incarceration is more than adequate to promote the goals of sentencing in this case.

### 3.    The Guidelines Range

In addition, the court has consulted and taken into account, as advisory, the kinds of sentence available and the applicable category of offenses and category of defendant as set forth in the United States Sentencing Guidelines and policy statements.  The court has used the Guidelines calculation as its initial starting point.  However, in view of the fact that the child pornography Guidelines are statutorily-driven, as opposed to empirically grounded, the court finds that the Guidelines ranges of imprisonment are not a reliable appraisal of a fair sentence in this case.  Because the child pornography Guidelines do not reflect the Sentencing Commission's unique institutional strengths, the court affords them less deference than it would to empirically-grounded guidelines.

Because the defendant's prior conviction for sexual abuse of a child is remote in time and was not followed by incidents of physical abuse in the intervening years, his culpability is somewhat lessened.  The defendant's previous incarceration seems to have had some positive impact on him, in that his subsequent crimes lessen in severity over time; however, it appears that further incarceration of the defendant is necessary to achieve the goals of sentencing.  The statutory recidivist increase provided under 18 U.S.C. § 2252(b)(1) already accounts for the sentencing concerns that inure to repeat offenders.  Given that he is subject to the mandatory minimum sentence of ten years, the further increases in the defendant's Guidelines sentence that result from application of

Guidelines enhancements inordinately increase the defendant's Guidelines range.  In Stults's case, the enhancements double his base offense level from 18 to 36, with a corresponding increase in the low end of his Guidelines sentencing range from 41 months (roughly three and a half years) to 262 months (almost 22 years), a seven-fold increase. An increase of this magnitude approximates the "tail wagging the dog" situation recognized by the Eighth Circuit in *United States v. Bradford*, 499 F.3d 910, 920 (8th Cir. 2007) (intimating that a seven-fold increase in the permissible sentencing range could be "an 'extreme' case where due process requires clear and convincing evidentiary support."); *United States v. Tyndall*, 521 F.3d 877, 884 (8th Cir. 2008) (noting that a seven-fold increase in the permissible Guidelines range might require the application of the clear and convincing standard of proof); *United States v. Garth*, — F.3d —, —, 2008 WL 4058096, *__ (8th Cir September 3, 2008) (acknowledging continuing validity of "clear and convincing" standard in some cases).

Because the Internet has become the typical means of obtaining child pornography, virtually every offender will get a two-level enhancement for use of a computer.  An enhancement for images containing prepubescent children is typical of this crime. Because of the increased ability to easily and inexpensively capture and store images with computers, the number of images does not reliably provide the distinction between large-scale and small-scale child pornography purveyors that Congress and the Sentencing Commission envisioned when promulgating the quantity-driven enhancement.  The connection between the number of images and a defendant's culpability is attenuated when, as here, the defendant is not widely disseminating the images, using them to entice a child, or showing them to a child.  Further, because of the unfortunate ease with which

20

a large number of images can be accessed and obtained, an enhancement of the magnitude of five levels is out of line with whatever connection there may be between a defendant's culpability and the number of images he possesses. Also, an enhancement of five levels for trading images for a thing of value, defined in the Guidelines to include other images of child pornography, is extreme, especially in a case where no commercial activity or profit is involved in the defendant's conduct. The same enhancement would be imposed on a commercial peddler. Moreover, the enhancement of four levels for portrayal of sadistic conduct applies whether or not a defendant specifically intends to possess such material and is an inadequate measure of culpability. The legislative history also shows Congressional concern with the use of computers to lure or entice children into sex acts. Stults's crime does not involve any such conduct.

The statutory range of imprisonment for Stults's crime is ten to twenty years. Stults is an example of a defendant who deserves a sentence closer to the low end of the statutory range than to the middle or high end.

### 4.    Sentencing Disparity

The court has also considered the need to avoid sentencing disparities. Possession of child pornography was criminalized in part because of concerns that the Internet facilitated access to and enticement of minors for sexual exploitation, as well as concerns that pedophiles use the materials to desensitize and entice victims. Although the defendant has a prior conviction for a child sexual abuse crime, his conduct in connection with this conviction does not involve either enticement of or actual communication with a minor. His conduct did not involve actual abuse, enticement, or even contact with any

victims.   He does not appear to fall within the class of the most dangerous child pornography offenders

Accordingly, the court finds that a sentence of 144 months (twelve years) is in line with the sentences imposed on similar defendants convicted of possession of child pornography with a previous conviction for a child abuse offense.   This sentence more closely approximates the sentencing range that was in effect before the Sentencing Commission merged the child pornography possession guideline into the trafficking guideline, thus maintaining the important qualitative distinctions between "mere possession" and "distribution" of child pornography.   The far greater culpability of an actual predator or abuser should be reflected in a sentence that greatly exceeds the punishment for the exploitative crimes that do not involve acts of abuse by a defendant.

## IV.    CONCLUSION

Accordingly, the court finds a sentence of 144 months (twelve years) will satisfy the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.   The court finds, under the circumstances of this case, that a sentence of incarceration shorter than the sentence recommended under the Guidelines, but still a lengthy sentence,  reflects the seriousness of the offense and provides just punishment.   The mere fact of Stults's prosecution and conviction will deter others from engaging in this sort of conduct, and a substantial sentence of twelve years of incarceration will provide further deterrence.   The deterrence

value of any longer sentence would be marginal.  Given that the benefit to society of a longer period of incarceration would be negligible, any benefit is outweighed by the potential harm a longer sentence would have on Stults's treatment and his eventual return to society as a productive citizen.  The need to protect society from further crimes of the defendant is accounted for in the court's imposition of a life term of supervised release and by several stringent special conditions of supervision, including restrictions on computer use and contact with children.

A Judgment and Commitment and Statement of Reasons in accordance with this Sentencing Memorandum will issue this date.

DATED this 12th day of September, 2008.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge